# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1630-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

R.F.,

     Defendant,

F.Q.,

     Defendant-Appellant,

_____

IN THE MATTER OF THE
GUARDIANSHIP OF C.J.Q.,
a minor.

_____

     Submitted September 10, 2024 – Decided October 15, 2024

     Before Judges Sumners and Perez Friscia.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0003-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant F.Q. (Fisher)[1] appeals from a Family Part order dated January 11, 2024, terminating his parental rights to his son, C.J.Q. (Carter). The Division of Child Protection and Permanency (Division) and the Law Guardian contend that the order should be affirmed. After reviewing the record and considering the applicable legal standards, we affirm substantially for the reasons stated by Judge Francine I. Axelrad in her thorough and well-reasoned 122-page oral opinion issued with the order.

The pertinent evidence was set forth in Judge Axelrad's opinion and need not be repeated here in detail. A summary will suffice.

---

[1] We use initials and pseudonyms to protect the identity and privacy of the individuals and the record of this proceeding. See R. 1:38-3(d)(12).

A-1630-23

In February 2022, when Carter was one year and three months old, defendant and the toddler's mother R.F. (Rochelle) were arrested in their motel room for distributing narcotics. Guns, drugs, and cash were found in the room, where Carter was sleeping. A month later, the Division removed Carter from Rochelle's care, who was released pending her criminal charges, and eventually placed him with the resource parent with whom he has lived since April 2022. Meanwhile, Fisher remained incarcerated after his arrest, and in November 2023 was sentenced to a term of incarceration with an expected May 2024 release date.

During Fisher's initial incarceration in county jail, the prison would not allow the Division to arrange for Carter to visit. However, starting in November 2023 when Fisher was sent to a state prison, the Division was allowed to arrange for him to have weekly, twenty-minute supervised video visits with Carter. Division services—substance abuse evaluation, parenting skills classes, and individual therapy—for Fisher were held in abeyance during the entire time he was incarcerated.

The Division eventually determined Carter should be adopted by his resource parent, who expressed interest in adopting him within two months of his placement with her and remained steadfast in adoption. After the Division

advised the resource parent about the possibility of kinship legal guardianship over Carter, she rejected it in favor of adoption.

Before supporting the resource parent's adoption of Carter, the Division was unsuccessful in placing him with family members. Fisher's stepmother in Texas was ruled out because of a negative interstate evaluation; she had substance abuse concerns, a lack of space, and her partner had a criminal history. His cousin was ruled out because she was noncompliant with the evaluation process. Rochelle's relatives were also ruled out for one reason or another.

In July 2023, the Division filed a complaint seeking guardianship of Carter and termination of the parents' parental rights. Shortly before the trial, Rochelle voluntarily surrendered her parental rights. Fisher, who was still incarcerated, wished to retain his parental rights and reunite with Carter.

The guardianship trial covered two days. The case worker and James Loving, Psy.D., an expert in clinical and forensic psychology, testified on behalf of the Division. Dr. Loving recommended termination of Fisher's parental rights and Carter's adoption by his resource parent as his "best available chance to" achieve "a true sense of permanency in the foreseeable future." Noting that Fisher "has spent the majority of his [life] since age [fourteen]" incarcerated and repeatedly violated parole and probation conditions, Dr. Loving opined he

A-1630-23

"pose[d] a high risk for returning to illegal behavior that could land him back in jail or prison." Further, this was exacerbated by his inability while incarcerated "to attend any services that might help address" his substance abuse and legal issues. Dr. Loving acknowledged Fisher's plan to seek a fresh start by moving to Texas and to live with his stepmother, find a job, and eventually raise Carter. However, the doctor believed this plan was not practical because it required either (1) delaying the move until Fisher first spent time in New Jersey with Carter in person; or (2) the court allowing Carter to move with him to Texas before he completed the necessary services in New Jersey demonstrating he was capable of properly raising his son.

Dr. Loving was unable to perform a bonding evaluation between Fisher and Carter due to Fisher's incarceration. He did perform one between Carter and his resource parent. He observed Carter had "a fairly strong, healthy, and secure attachment" with the resource parent and opined Carter "view[ed] her as a beloved and important parent[al] figure" under whose care he was "thriving behaviorally and emotionally," with "every reason to expect that [their bond] will grow even stronger if he remains under her care." Dr. Loving also opined removing Carter from his resource parent's care, even to reunite him with his parents, "would place him at fairly high risk for long-term emotional harm"

5

because his ability to "continue building healthy attachments" would "diminish with every new removal."

Fisher, appearing via video link, testified on his own behalf. He requested additional time to undergo substance abuse treatment, complete services, and obtain stable housing and employment before a termination decision was rendered. He requested Carter remain with his resource parent in the meantime. He recalled first meeting Carter at the age of five months, as he was incarcerated for a different offense when Carter was born. He described how he cared for his son during the ten months between their first meeting and the motel arrest: he fed and bathed Carter, changed his diapers, took him to his doctor's appointments, and watched him take his first steps. He believed Carter gave his life "a purpose" and motivated him to change for the better.

The judge found Fisher's testimony credible and his intentions to raise his son "sincere." Nevertheless, she gave Dr. Loving's opinions "tremendous weight." Based on the trial testimony and exhibits, the judge found the Division provided clear and convincing evidence supporting the four prongs of the "best interests of the child" standard set forth in N.J.S.A. 30:4C-15.1(a) to terminate Fisher's parental rights.

Before us, Fisher presents the following arguments:

POINT I

THE RECORD DOES NOT CONTAIN SUBSTANTIAL CREDIBLE EVIDENCE THAT [CARTER'S] HEALTH AND DEVELOPMENT HAD BEEN OR WILL BE ENDANGERED BY HIS PARENTAL RELATIONSHIP WITH [FISHER] OR THAT [FISHER] WAS UNABLE OR UNWILLING TO ELIMINATE ANY HARM OR PROVIDE A SAFE AND STABLE HOME FOR HIM.

POINT II

THE COURT ERRED IN FAILING TO ADEQUATELY CONSIDER ALTERNATIVES TO TERMINATION OF [FISHER'S] PARENTAL RIGHTS UNDER THE THIRD PRONG.

POINT III

THERE IS INSUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE TRIAL COURT'S CONCLUSION THAT THE DIVISION ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT TERMINATION OF [FISHER'S] PARENTAL RIGHTS TO HIS SON WILL NOT DO MORE HARM THAN GOOD UNDER THE FOURTH PRONG.

We find no merit in any of Fisher's arguments. He essentially argues there was insufficient evidence that Carter's best interests are in being adopted by the resource parent after terminating Fisher's parental rights. Based on our review of the record, we find that Judge Axelrad's decision is supported by substantial credible evidence. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J.

7

420, 448-49 (2012).  She copiously sifted through Carter's brief history, fairly evaluated Fisher's life of crime and lack of stable housing and employment, and cogently applied the best interests test.  We also conclude that Fisher's appellate arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1630-23